IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

v.                                                                                                                   No. 06-2611

SHARP MANUFACTURING COMPANY
OF AMERICA, A DIVISION OF SHARP
ELECTRONICS CORPORATION,

    Defendant.

---

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

        The Plaintiff, Equal Employment Opportunity Commission ("EEOC"), brought the instant action against Defendant Sharp Manufacturing Company of America ("Sharp") on behalf of Delores Vaughn, one of Sharp's former employees, based on allegations that the Defendant violated the Americans with Disabilities Act ("ADA"). Before the Court is Sharp's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. No. 16.) The EEOC has responded, and this motion is appropriate for disposition. For the reasons set forth below, the motion is granted in part and denied in part.

BACKGROUND

        The following facts are undisputed unless noted. Vaughn began working for Sharp in 1993 as a temporary hire, but became a permanent employee two years later. (Doc. No. 16, Def.'s Statement of Facts ¶ 1.) Vaughn worked on the second shift of the "B-line" as an F-2 Microwave

Assembler until that line was shut down in January of 2004. (Id. ¶ 2.) She then moved to the first shift of the "C-line." (Id.) Vaughn's job duties on the C-line were different than those on the B-line, although she was still assembling microwaves. (Id. ¶ 3.) She was assigned to a standing station on the C-line, even though, as the EEOC contends, there were seated positions available. (Doc No. 19, Pl.'s Statement of Facts ¶ 3.) Shortly thereafter, she had to go to the hospital because she was experiencing severe pain in her legs as a result of her osteoarthritis. (Id. ¶¶ 3,11.) Vaughn then made her first request for a seated position, which was denied. (Id. ¶ 3.)

In late February or early March of 2004, Vaughn successfully bid on a position as an assembler in the Solar Production Department ("Solar") and began that work on March 22.[1] (Doc. No. 16, Def.'s Statement of Facts ¶ 4.) According to the EEOC, Vaughn sought the assembler position because her pain had become unbearable and she hoped that she would be able to sit in Solar. (Doc No. 19, Pl.'s Statement of Facts ¶ 4.) Unfortunately, her new position also required her to stand. (Doc. No. 16, Def.'s Statement of Facts ¶ 6.) After two months of working at Solar, Vaughn brought in a statement from her internal medicine doctor and an orthopedist advising that she should no longer stand at work. (Doc No. 19, Pl.'s Statement of Facts ¶ 5.) Thus, she asked to be assigned to a seated position. (Id.) After denying the request, Sharp sent her home. (Doc. No. 16, Def.'s Statement of Facts ¶ 7; Doc No. 19, Pl.'s Statement of Facts ¶ 7.)

Subsequently, Vaughn requested that she be moved back to the Microwave Oven Production Department (the "Microwave Department") and be allowed to sit on a stool for her entire shift. (Doc. No. 16, Def.'s Statement of Facts ¶ 8.) Sharp alleges that it had no F-2 Assembler positions

---

[1] Article 7 of the Collective Bargaining Agreement between Sharp and its union, the International Brotherhood of Electrical Workers, outlines how Sharp employees bid on available jobs. (Doc. No. 19 Ex. 9 to Dep. of T.C. Jones.) In order to bid on a vacant position, employees must have been at their present job for at least sixth months. (Id. ¶ 7.8.)

in the Microwave Department available and posted for bidding. (Id. ¶ 9.) The EEOC disputes this contention, claiming that the Defendant began hiring "casuals" and F-2 Assemblers within only a few days of sending Vaughn home. (Doc No. 19, Pl.'s Statement of Facts ¶ 9.) Vaughn filed a Charge of Discrimination with the EEOC on May 26, 2004, which initiated the present case. (Doc. No. 16, Def.'s Statement of Facts ¶ 23.) On June 8, 2007, approximately two weeks after being sent home, Vaughn was terminated by Sharp. (Doc. No. 19 Ex. 9, Separation Notice.) Vaughn submitted an application for Social Security Disability Insurance ("SSDI") on June 18, 2004, wherein she claimed that she became disabled on June 8. (Doc. No. 16, Def.'s Statement of Facts ¶¶ 24-25.)

The EEOC filed the instant lawsuit in this Court on September 19, 2006, contending that Sharp's actions violated the ADA. (Doc. No. 1, Compl. at 4.) The Complaint seeks a permanent injunction enjoining the Defendant from further discrimination on the basis of disability, as well as back pay, punitive damages, and other forms of relief. (Id. at 5.) The Defendant filed the instant dispositive motion on October 31, 2007.

## STANDARD OF REVIEW

Rule 56 (c) provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharms, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is

supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). Finally, the "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## ANALYSIS

The ADA prohibits employers from discriminating against a qualified individual with a disability based on that disability. 42 U.S.C. § 12112(a). In a direct evidence case, such as the one before the Court,

> (1) The plaintiff bears the burden of establishing that he or she is disabled. (2) The plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation. (3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer.

4

Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007) (quoting Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir.), cert. denied, 543 U.S. 817 (2004)). Sharp makes three arguments in support of its motion. First, it contends that the EEOC cannot produce sufficient evidence that Vaughn is disabled. Second, it claims that Vaughn is not a qualified individual with a disability. Last, it insists that Vaughn could not reasonably be accommodated. (Doc. No. 16, Def.'s Mem. in Supp. Mot. Summ. J., at 10-28.) The Court will address these arguments in turn.

A.  WHETHER VAUGHN IS DISABLED

A "disability" under the ADA is defined as

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). The EEOC seeks only to satisfy the first definition of disability by proving that Vaughn suffers from osteoarthritis that is severe enough to substantially limit her ability to stand and walk. (Doc. No. 16, Def.'s Statement of Facts ¶ 11.) Standing and walking are both considered major life activities. See 29 C.F.R. § 1630.2(i) (walking); Plant v. Morton Int'l, Inc., 212 F.3d 929, 937 (6th Cir. 2000) (standing) (citations omitted). A person is substantially limited within the meaning of the ADA if he or she is: "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

In this case, the medical evidence is as follows. On May 14, 2004, almost a month before Sharp terminated Vaughn, Dr. Dana Wright, who treated her arthritis, wrote a letter to Sharp stating that "a sitting position [for Vaughn] would be better than standing." (Doc. No. 19 Ex. 6.) Five days

5

later, Dr. W. Lee Moffatt, Vaughn's orthopedist, included in a note that "she should be <u>permanently</u> restricted from standing to work." (Doc. No. 19 Ex. 4 to Dep. of Dr. Moffatt.) In his deposition, Dr. Moffatt testified that Vaughn told him that she was able to stand for two hours and walk for two to three hours. (Doc. No. 19 Ex. 7, Dep. of Dr. Moffatt, at 6, 10-11.) On June 1, 2004, Dr. Moffatt wrote another memo to Sharp, stating that Vaughn "wants to return to work, but she will have some difficulties with prolonged standing. I will try brace supports to both knees and both ankles while standing at work. Return to regular duty Thursday 6/3/04." (Doc. No. 19 Ex. 4 to Dep. of Dr. Moffatt.) In his deposition, Dr. Moffatt admitted that he agreed to release her to return to work full duty, without restrictions. (Doc. No. 19 Ex. 7, Dep. of Dr. Moffatt, at 10.) According to Dr. Moffatt, Vaughn reported that her knee pain had improved. (<u>Id.</u> at 9.) Dr. Arsen Manugian, a Sharp physician, examined Vaughn several days later, on June 7, 2004. (Doc. No. 19 Ex. 8, Dep. of Dr. Manugian, at 5.) He testified that she walked with considerable difficulty and that he thought she could "go back to a sedentary type position where she could sit, occasionally stand, wear her braces . . ." (<u>Id.</u> at 8.) Specifically, he thought she could stand for about an hour at a time three times during an eight hour shift, depending on whether her arthritis was flaring up or not. (<u>Id.</u> at 5, 9.) According to Dr. Manugian, Vaughn stated that "she didn't feel she could go back to . . . the position she was in where she had to stand for long periods of time." (<u>Id.</u> at 8.)[2]

Vaughn herself testified that she could stand, but that it became very painful after five or ten minutes. (Doc. No. 19 Ex. 1, Dep. of Delores Vaughn, at 77.) Even her knee braces did not help. (<u>Id.</u> at 80.) In addition, Vaughn estimated that she could walk about a block at a time, or from her

---

[2] The EEOC has also introduced the testimony of Dr. Anna M. Hicks, who examined Vaughn in September of 2004. Because this examination took place approximately three months after Vaughn was discharged, the Court will not consider it.

car in the employee parking lot to her work station. (Id. at 84.) Vaughn also stated that by the time she was terminated, her condition had been greatly aggravated after months of standing. (Id. at 88.) Her health further deteriorated when she lost her insurance as a result of being terminated and had no medication (Id.)

    1. Standing

The Sixth Circuit recently held that a hairdresser who could only stand for fifteen to twenty minutes at a time, or sometimes for an hour or two, was not substantially limited in her ability to stand. Bryson v. Regis Corp., 498 F.3d 561, 575 (6th Cir. 2007). Other circuits have come to similar conclusions. See, e.g., Williams v. Excel Foundry & Mach., Inc., 489 F.3d 309, 312 (7th Cir. 2007) ("Because we also believe that thirty to forty minutes is not a 'very brief' period, we find that Williams's inability to stand for longer periods does not constitute a substantial limitation on the major life activity of standing."); Dupre v. Charter Behavioral Health Sys., Inc., 242 F.3d 610, 614 (5th Cir. 2001) (rejecting claim of an individual who could not stand continuously for more than one hour without sitting for a while thereafter); Taylor v. Pathmark Stores, Inc., 177 F.3d 180, 186 (3d Cir. 1999) (upholding summary judgment against an employee who could only stand or walk for 50 minutes in an hour). In Bryson, however, the employee only needed a three to four minute break to recover from standing for fifteen to twenty minutes. 498 F.3d at 567. Thus, she could work in a standing position for over forty-five minutes during the course of an hour. Similarly, in Williams, the employee needed to sit or lie down for only "a brief period" after standing for thirty to forty minutes. 489 F.3d at 310. The employee in Taylor required a ten minute break after standing for an hour. 177 F.3d at 186.

The Court finds that there is a material issue of fact as to the extent of Vaughn's limitation. If true, Vaughn's own testimony that by the end of May she could only stand for about ten minutes without severe pain and Dr. Manugian's finding that she was only physically capable of standing

for about three hours in the course of an eight hour shift indicate that she may have been substantially limited in her ability to stand. However, that testimony appears to be contradicted by Dr. Wright's mildly worded suggestion that a seated position would suit Vaughn better than a standing one and Dr. Moffatt's June 1, 2004 finding that Vaughn could return to work without restrictions. A reasonable jury could find in the EEOC's favor, however, especially in light of the fact that Dr. Moffatt's note can be interpreted as a reluctant concession to Vaughn's own desire to attempt to return to work, rather than lose all income and benefits. (See Doc. No. 19 Ex.. 4 to Dep. of Dr. Moffatt (stating that Vaughn "wants to return to work, but she will have some difficulties with prolonged standing.").)

2. Walking

The Defendant argues that even if Vaughn was substantially limited in her ability to walk, that limitation has no bearing on this case because her proposed accommodation, being able to work seated, only relates to her alleged inability to stand. (Doc. No. 16, Def.'s Mem. in Supp. Mot. Summ. J., at 12.) The Eighth Circuit has held that "there must be a causal connection between the major life activity that is limited and the accommodation sought." Wood v. Crown Redi-Mix, Inc., 339 F.3d 682, 687 (8th Cir. 2003). In this case, there is no evidence that it was Vaughn's inability to walk that motivated her accommodation request. Rather, Vaughn's own testimony supports the Defendant's argument that her request to be allowed to work in a seated position was based on the pain she experienced standing, not walking. (See, e.g., Doc. No. 19 Ex. 1, Dep. of Delores Vaughn, at 31, 41, 46.) Thus, no ADA claim is permitted on the basis that Vaughn was substantially limited in her ability to walk.

B. WHETHER VAUGHN IS A QUALIFIED INDIVIDUAL WITH A DISABILITY

According to the ADA, a qualified individual with a disability is someone with a disability

"who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Defendant argues that Vaughn is not a qualified individual with a disability in light of the fact that she submitted a sworn statement in her application for SSDI that asserted that she was unable to work because she was disabled. (Doc. No. 16, Def.'s Mem. in Supp. Mot. Summ. J., at 15-19.) The Supreme Court has held that "pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 797 (1999). This is because while the ADA defines a "qualified individual" as one who can perform the essential functions of her job with reasonable accommodation, the Social Security Act "does *not* take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." Id. at 803. "Nonetheless, an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.'" Id. at 798.

In this case, the Plaintiff argues that there is no inconsistency between her ADA claim and her SSDI application because her "situation changed" from the time when she filed her EEOC charge to when she completed her SSDI application. (Doc. No. 19, Pl.'s Mem. in Opp. to Def.'s Mot. Summ. J. ("Pl.'s Mem. in Opp."), at 18.) According to the EEOC, Vaughn was able to work with a reasonable accommodation when she filed her charge of discrimination, but

> [w]hen she completed her SSDI application, her condition had worsened after being forced to stand for several months. She said she was in such pain that even morphine didn't help. She had also run out of the medicine: she had no pain meds and she was having seizures because she was without insulin.

(Id. (internal citations to the record omitted).) Thus, the Defendant submits, by the time Vaughn filed for SSDI benefits, she could no longer have worked at Sharp even *with* a reasonable accommodation. (Doc. No. 16, Dep. of Delores Vaughn, at 101 (admitting that she was unable to perform any job by the time she applied for SSDI).) The record reveals that Vaughn filed the EEOC

9

charge on May 26, 2004, exactly one week after Sharp sent Vaughn home after denying her latest request for a seated position. (Doc. No. 16, Ex. 5 to Dep. of Delores Vaughn, Charge of Discrimination.) Vaughn's SSDI application, which was filed on June 18, 2004, states that Vaughn became unable to work because of a disabling condition on June 8, 2004, the same day she was officially discharged from Sharp and only two weeks after she filed her EEOC charge. (Doc. No. 16, Ex. 6 to Dep. of Delores Vaughn, SSDI Application, at 1.)

In light of this evidence, the Court must ask whether the Plaintiff's explanation of the apparent inconsistency between Vaughn's EEOC charge and her SSDI application is "sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the [SSDI application statement], the plaintiff could nonetheless [have] 'perform[ed] the essential functions' of her job, with or without 'reasonable accommodation'" at the time she filed the EEOC charge. Cleveland, 526 U.S. at 807. The Seventh Circuit has recognized that "it is possible that the passage of time and a concomitant change in the disability could explain an inconsistency between SSDI and ADA status." Feldman v. Am. Mem'l Life Ins. Co., 196 F.3d 783, 791 (7th Cir. 1999). In this case, that passage of time is quite short. Nonetheless, the Court believes that a reasonable jury could find that Vaughn's medical condition deteriorated within that time to the point where she was incapable of performing any work, particular in light of the fact that she did not have any medication for her pain or diabetes. (Doc. No. 19 Ex. 1, Dep. of Delores Vaughn, at 101, 137.) Thus, there is a question of material fact as to whether Vaughn was a qualified individual with a disability at the time she filed her EEOC charge.

C. <u>WHETHER VAUGHN'S DISABILITY COULD NOT REASONABLY BE ACCOMMODATED</u>

According to the ADA, reasonable accommodation may include

(A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
(B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of

10

> qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). The Defendant argues that Vaughn's disability could not reasonably be accommodated because 1) there is no evidence that there were any available F-2 Assembler positions in the Microwave Department; 2) Vaughn could not have been made a casual employee in the Microwave Department; 3) transferring her into the Microwave Department would have violated the collective bargaining agreement between Sharp and the union Vaughn was a member of; and 4) being able to stand is an essential function of an F-2 Assembler. (Doc. No. 16, Def.'s Mem. in Supp. Mot. Summ. J., at 20-19.) The EEOC counters that 1) Vaughn could perform the essential job functions of an F-2 Assembler, as long as she was accommodated by being allowed to sit on a stool; 2) Sharp failed to engage in the interactive process; 3) the Defendant has failed to show that Vaughn's accommodation request was unreasonable or would impose an undue hardship; and 4) Sharp has not demonstrated that Vaughn could not be reasonably accommodated with a transfer out of Solar . The Court will address these arguments in turn. (Doc. No. 19, Pl.'s Mem. in Opp., at 11-17.)

    1.    <u>Whether Vaughn Could Have Been Accommodated with a Transfer to a Vacant F-2 Position</u>

A reasonable accommodation under the ADA may include reassignment to a vacant position. <u>Kleiber</u>, 485 F.3d at 869 (citation omitted). Thus, "an employer has a duty under the ADA to consider transferring a disabled employee who can no longer perform [her] old job even with accommodation to a new position within the Company for which that employee is otherwise qualified." <u>Burns v. Coca-Cola Enter.</u>, 222 F.3d 247, 257 (6th Cir. 2000). However, "[e]mployers are not required to create new jobs, displace existing employees from their positions, or violate other

employees' rights under a collective bargaining agreement or other non-discriminatory policy in order to accommodate a disabled individual." Id. (citation omitted).

The Court finds that there is a material issue of fact as to whether there were any F-2 Assembler positions available when Vaughn requested a reassignment in May of 2004. In support of its argument that there were no vacant positions, Sharp submitted an affidavit by T.C. Jones, its Vice President of Human Resources and General Affairs, in which he confirms that "there were no job postings for grade F-2 Assemblers in the Microwave Oven Department nor were any new employees hired as grade F-2 Assemblers." (Doc. No. 19 Ex.3, Aff. of T.C. Jones ¶ 3.) A list of vacant jobs between April 30, 2004 and July 6, 2004 also established that there were no job postings for F-2 Assemblers. (Doc. No. 19 Ex.3, Ex. 1 to Aff. of T.C. Jones.) Vaughn indicated, however, that she saw postings for both casuals and F-2 Assemblers on the B-line at the time she was terminated. (Doc. No. 19 Ex. 1, Dep. of Delores Vaughn, at 48-49.) Furthermore, the EEOC has attached a list of employees hired by Sharp in the months between May 3, 2004 and August 16, 2004. (Doc. No. 19 Ex. 8 to Dep. of Karin Tanaka.) Most of these hires were characterized as casuals, although a few were called assemblers. (See id.) Sharp's Department Manager of Personnel, Karin Tanaka, attempted to explain this apparent contradiction by asserting that the assemblers were originally hired as casuals and were only later converted to assemblers. (Doc. No. 16 Ex. 9, Aff. of Karin Tanaka ¶ 4.) At this stage, however, the Court cannot weigh the evidence and determine whose interpretation of the document is more credible. Adams, 31 F.3d at 379 ("The judge may not make credibility determinations or weigh the evidence."). Thus, it must deny Sharp's

motion for summary judgment on the basis that there were no vacant F-2 Assembler positions at the time Vaughn made her accommodation request.[3]

### 2. Whether Vaughn Could Have Been Accommodated with a Transfer to a Vacant Casual Position

Next, Sharp argues that Vaughn was not eligible to be transferred to a vacant casual position, because her disability would not permit her to perform some of the job assignments demanded of casual employees, rendering her not "otherwise qualified." (Doc. No. 16, Def.'s Mem. in Supp. Mot. Summ. J., at 22.) Sharp cites a 1995 case wherein this court held that a prospective employee with spina bifida was not qualified to work as a casual at Sharp, even with the accommodation of a stool and wheeled cart, when he walked with the aid of crutches, could not stand for prolonged periods of time, or lift and carry significant weight. (EEOC v. Sharp Mfg. Co. of Am., No. 95-2405, Doc. No. 36 at 5-6.) In reaching this conclusion, the court examined the official job description for casuals, as well as the collective bargaining agreement, and found that casuals were often assigned "to the most difficult tasks as a temporary replacement for absent regular employees, in accordance with defendant's collective bargaining agreement." (Id. at 5.) The Plaintiff correctly points out that the 1995 case is factually distinguishable from this matter because the prospective employee not only had difficulty standing and walking, but could not lift either. (Doc. No. 19, Pl.'s Mem. in Opp., at 16.) However, the EEOC cannot deny that casuals are required to take any job assigned to them and that it is at best "likely" that a casual will be assigned a seated position. (See id.; Doc. No. 19

---

[3] The Defendant argues that even if there had been a vacant F-2 Assembler position available in the Microwave Department, there is no guarantee that Vaughn would have gotten a seated position or would have been able to "bump" a casual from a seated job. (Doc. No. 16, Def.'s Mem. in Supp. Mot. Summ. J., at 22.) However, Vaughn's testimony as to the abundance of seated positions in both the B and C-lines creates a material issue of fact. (See Doc. No. 19 Ex. 1, Dep. of Delores Vaughn, at 22, 28.)

13

Ex. 1, Dep. of Delores Vaughn, at 51.) Thus, because the flexibility to take any available position, even a standing one, is an essential function of the job, the Court concludes that Vaughn was not "otherwise qualified" to be a casual. See 42 U.S.C. § 12111(8) (stating that a "qualified individual with a disability" must be able to perform the "essential functions of the employment position" with or without a reasonable accommodation); 29 C.F.R. § 1630.2(n)(2)(i) ("The job function may be considered essential . . . [when] the reason the position exists is to perform that function.").

       3.     <u>Whether Transferring Vaughn to a Vacant F-2 Assembler or Casual Position Would Have Violated the Collective Bargaining Agreement</u>

Last, Sharp contends that allowing Vaughn to transfer to either a regular or casual position in the Microwave Department would have violated the collective bargaining agreement, which provides that an employee must have been at his or her current position for at least six months before being eligible to bid on another position. (Doc. No. 19 Ex. 9 to Dep. of T.C. Jones, Collective Bargaining Agreement Article ¶ 7.8.) When Vaughn requested to be transferred out of the Solar, she had been working there less than three months. The collective bargaining agreement further states, however, that even though employees who have been at their post for less than six months are not eligible to bid on vacant positions, they can be considered for such jobs if there are no eligible bidders. (Id. ¶ 7.9.) Sharp in fact had an obligation to consider these and other qualified employees "on layoff" before hiring "from outside." (Id.) Because the Court has found that there is a material issue of fact as to whether Sharp was hiring new F-2 Assemblers when Vaughn made her accommodation request, the Court cannot properly hold that allowing Vaughn to transfer to the Microwave Department would have violated the collective bargaining agreement.

####  4. Whether Standing is an Essential Job Function for F-2 Assemblers

After an employee has established that he or she is disabled, but "otherwise qualified" for a position, either with or without a reasonable accommodation or with an allegedly "essential" job requirement eliminated, "the employer then bears the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that the proposed accommodation would impose an undue hardship." Kiphart v. Saturn Corp., 251 F.3d 573, 581 (6th Cir. 2001) (citation omitted). Evidence of whether a particular function is essential includes, but is not limited to

> (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs

29 C.F.R. § 1630.2(n)(3).

The Defendant argues that standing is an essential job requirement because F-2 Assemblers must rotate into different positions as part of an ergonomic program instituted in the Microwave Department in 2003. (Doc. No. 16, Pl.'s Mem. in Supp. Mot. Summ. J., at 26.) Some of the positions employees are required to rotate into involve standing and some include sitting. (Id.) According to Daniel Wilburn, Sharp's Department Manager for Safety and Environment, "[i]t is physically impossible to perform the job tasks associated with the standing positions in a sitting position." (Doc. No. 16 Ex. 7, Aff. of Daniel Wilburn ¶ 4.) The Plaintiff rebuts this evidence with Vaughn's own testimony that she worked as an F-2 Assembler in the B-line from 1995 until 2004 without standing. (Doc. No. 19 Ex. 1, Dep. of Delores Vaughn, at 18-23.) Furthermore, the EEOC has submitted the F-2 Assembler job description, which makes no mention of any such requirement. (Doc. No. 19 Ex. 2 to Dep. of T.C. Jones.) Last, T.C. Jones testified that the Defendant's

Ergonomic Program does not explicitly require that any of the positions be performed standing. (Doc. No. 19 Ex. 5, Dep. of T.C. Jones, at 45.) Jones also admitted that Class A and Class B, two of the positions described by the Program, can be performed in a seated position and that employees need only rotate every four hours, or once during an eight-hour shift. (Id. at 41.) Thus, if Vaughn rotated back and forth between Classes A and B, she could perform an entire day's work seated. In light of this evidence, the Court finds that the Defendant has not established that standing is an essential job function.[4]

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Defendant's motion for summary judgment. (Doc. No. 16.) Specifically, it finds that the Plaintiff has raised an issue of material fact as to whether Vaughn is a disabled individual who is otherwise qualified, either with or without a reasonable accommodation or with an allegedly "essential" job requirement eliminated. The Court grants the Defendant's motion for summary judgment to the extent that Sharp argues 1) that no ADA claim is permitted on the basis that Vaughn was substantially limited in her ability to walk and 2) that Vaughn was not otherwise qualified to be a casual employee.

**IT IS SO ORDERED** this 1st day of February, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[4] The EEOC also argues that the Defendant failed to engage in the interactive process. (Doc. No. 19, Pl.'s Mem. in Opp., at 12-13.) However, this contention does not respond to any argument made by Sharp in its motion for summary judgment and the EEOC itself has not moved for summary judgment on this or any other issue. Thus, the Court will not address this question in its current Order.